# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**BRAD PORTER**                                                                        **PLAINTIFF**

**V.**                                                                     **CASE NO. 1:04CV218**

**LOWNDES COUNTY, MISSISSIPPI;**
**LOWNDES COUNTY SHERIFF'S DEPARTMENT;**
**and JAMES FARRIS, In His Individual Capacity**                           **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the Court on the defendants' motion for summary judgment [28-1]. The Court has reviewed the briefs and exhibits and is prepared to rule.

The plaintiff is Brad Porter, a former road deputy and criminal investigator for the Lowndes County Sheriff's Department. The defendants include both the Lowndes County Sheriff's Department and Lowndes County as a separate entity, as well as James Farrish, another deputy and criminal investigator with the Department who is being sued in his individual capacity.

## FACTS

Sometime in the spring of 2002, Brad's father approached him to advise him that he suspected Brad's wife, Brenda Porter, of embezzling money and forging a bank check drawn on the account of Brad's parents. Brenda initially denied doing so, and Brad advised his father to instigate a criminal investigation with the Columbus Police Department (the "CPD"). On May 16, 2002, Brenda falsely reported that the Porter family home had been burglarized. Brad, accompanied by several fellow investigators, responded to the call and soon arrived at the Porter home. James Farris was the on-duty investigator at the time, and he was assigned to lead the investigation into the alleged burglary. An inventory of the "missing contents" included (1) several pieces of jewelry; (2)

a number of weapons owned by Brad, including a Winchester .20 gauge shotgun, an AR15 assault rifle, a Franchi shotgun, a Remington .270, a Ruger handgun, and a Glock .45 caliber handgun; (3) several Department uniforms; and (4) one "duty" belt, i.e a belt worn by deputies in the field which holds their equipment. It was later learned that the duty belt was not among the stolen items but had been lent by Brad to a fellow officer, a fact which Brad himself brought to Farris's attention. The Porters subsequently filed an insurance claim, but the insurance company refused to pay, apparently because Brenda's check to the insurance company had bounced.

On June 10, 2002, officers of the CPD arrested Brenda on forgery charges. At the time of Brenda's arrest, Brad expressed anger towards the arresting officer due to a perceived failure to demonstrate "professional courtesy" by failing to inform him in advance of their intent to arrest Brenda. Subsequently, Brad was placed on paid administrative leave after Columbus police officers reported that Brad threatened them with revenge and retaliation. After Brenda was booked and released by the CPD, she left Lowndes County to spend time with her parents in Atlanta, Georgia. While she was gone, Brad happened to discover a number of items in the Porter family home, including (1) a number of documents including unpaid bills of which Brad was unaware, (2) pleadings filed by Brenda in a bankruptcy case of which he was also unaware, (3) several pieces of jewelry which Brad recognized as the jewelry purportedly stolen in the burglary, and (4) a writing tablet which Brenda used to practice forging the signature of Brad's mother. Brad called Farris to inform him of these discoveries, but Brad declined to let police search his home absent a search warrant. On July 21, 2002, Farris, accompanied by CPD officers, obtained a search warrant for the Porter home. During the course of this search, they discovered the Franchi shotgun in the attic and the remaining weapons in a bedroom closet, except for the Ruger pistol, which apparently was found

by police on the side of a Lowndes County road.

Upon Brenda's return, she was interviewed by Farris, and she confessed to staging the burglary while insisting that Brad was not involved. Despite these assurances, Farris suspected that Brad was involved in staging the burglary because Brenda could not explain how the Ruger ended up on the side of a county road and because he did not believe that she could reach the attic to place the rifle there without help, as well as other statements made by the Porters which Farris found to be incriminating. Farris then sought an indictment against both Brenda and Brad for falsely reporting a burglary, embezzlement and false pretenses. In August of 2002, Farris presented the matter to the Lowndes County grand jury which issued an indictment against Brad. However, according to Brad, Farris improperly kept crucial exculpatory information from the grand jury which undermined its impartiality.

After issuance of the indictment, the Lowndes County Sheriff removed Porter from the investigative arm of the Department, ostensibly because the local District Attorney, Forrest Allgood, did not wish to work with Brad due to a perceived loss of credibility. Brad was later terminated from his position altogether. About eighteen months after the indictment was issued, the District Attorney's office requested that the charges against Brad be dropped for "insufficient evidence," and an order of nolle prossequi was entered in the Lowndes County Circuit Court.

On July 15, 2004, Brad filed this Complaint against the Sheriff's Department (and, out of an abundance of caution, Lowndes County as a separate entity) and against Farris in his individual capacity. The complaint alleges a 42 U.S.C. § 1983 claim against the County, as well as state law claims for abuse of process, malicious prosecution and malicious interference with employment relations against both the County and Farris. The defendants now seek summary judgment.

## ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 120 S.Ct. at 2110.

The posture of this case places the Court in an unusual position. The sole federal claim present in this case is the plaintiff's § 1983 claim against the County, as Brad has not brought suit against Deputy Farris in his official capacity. The remainder of the claims against all defendants are purely state law claims, and the Court only has supplementary jurisdiction to hear such claims. Accordingly, the § 1983 claim must be addressed first.

As a threshold matter, there is some confusion between the parties as to whether the § 1983 claim should be brought against the County or the Sheriff's Department. The defendants argue that the Sheriff's Department is not an entity capable of being sued. Brad responds by saying that he merely added the claim against the Sheriff's Department out of a abundance of caution an in light of the Fifth Circuit's holding in Oden v. Oktibbeha County, Miss., 246 F.3d 458, 464 n. 3 (5th Cir.

4

2001). There, the Fifth Circuit implied in a footnote that a judgment could not be maintained against the defendant Oktibbeha County for the plaintiff's 42 U.S.C. § 1981 claims because the adverse employment action he suffered was the result of the policies of the Sheriff's Department rather than the County. The footnote in question is plainly dicta, as the Fifth Circuit had already disposed of that particular claim on other grounds. In any case, the Court interprets the defendants' brief to concede that the County is the proper defendant, and for the purposes of this opinion and order, the Court also concludes that the Department and the County may be discussed interchangeably.

As the Court understands the complaint, the plaintiff has only one claim for § 1983 liability: that County policy allowed Deputy Farris to seek an indictment of Brad without meaningful oversight from departmental supervisors and that this lack of oversight gave Farris free reign to pursue an indictment without probable cause and without informing the grand jury of crucial exculpatory information.

Whether an arrest is illegal hinges on the absence of probable cause. Sorenson v. Ferrie, 134 F.3d 325, 328 (5th Cir. 1998). Generally, a probable cause analysis turns on whether the arresting officer "posses[es] knowledge that would warrant a prudent person's belief that [the suspect] had already committed or was committing a crime." Sorenson, 134 F.3d at 328 (quoting Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1305 (5th Cir. 1995).

The Fifth Circuit has held repeatedly that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or a grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Taylor v. Gregg, 36 F.3d 453, 456-57 (5th Cir. 1994). Even "an officer who acted with malice in procuring the warrant or indictment will not be liable" if the facts offered to support the warrant or indictment are put in front of such

5

an impartial intermediary, "for that intermediary's independent decision breaks the causal chain and insulates the initiating party."  Taylor, 36 F.3d at 457.  This chain of causation is only broken, however, where all the facts are presented to "the grand jury . . . and the malicious motive of the officer does not lead him to withhold any relevant information."  Id.

The plaintiff acknowledges this standard but argues that Farris did in fact withhold relevant exculpatory information.  Farris's grand jury testimony apparently consisted solely of reading his investigation report and the record of all statements he took to the jury.  The aspects of Farris's testimony with which the plaintiff takes issue are as follows:  First, Farris related statements allegedly made by Brenda and Brad which Farris found to be incriminating but which were apparently not overheard by other officers present.  Second, several of the stolen guns were hidden behind a safe instead of kept in the safe.  Brad claimed that the safe was too small to store the guns, but Farris concluded that some of them could be kept in the safe, although he never actually looked inside it.  There is some conflicting testimony about Brad's duty belt, which had been loaned to another officer, and about the discovery of the Ruger pistol along the side of the road.  In the later instance, Brad made what Farris considered to be inculpatory statements regarding the Ruger and where it was found.  The plaintiff asserts that "everybody in the sheriff's office knew" about the circumstances surrounding the discovery of the Ruger and that Brad could have provided an innocent explanation for his suspicious comments if he had only been asked.  The remainder of the incriminating evidence relied upon by Farris appears to be rebutted only by the deposition testimony of the plaintiff.

The Court disagrees with Brad's analysis.  Ultimately, the questions to be answered are (1) did the grand jury have probable cause to believe that Brad committed a crime and (2) did Farris

improperly and maliciously induce this belief by withholding evidence of Brad's innocence. The Court notes that, at the federal level, there is no duty to present exculpatory evidence to federal grand juries. U.S. v. Williams, 504 U.S. 36, 55, 112 S.Ct. 1735, 1746, 118 L.Ed.2d 353 (1992). The states are split on this issue, and the question appears to be an issue of first impression in Mississippi. However, the majority rule appears to be that prosecutors are only obligated to present exculpatory evidence to a grand jury if the evidence clearly negates guilt, and such prosecutors are not obligated to present all evidence that is conceivably exculpatory. See 49 A.L.R. 5th 639 § 4 (citing cases). Only three states hold that a prosecutor has a broad duty to present all exculpatory evidence: California, Nevada, and Texas. See 49 A.L.R. 5th 639 § 3 (citing cases).

The Court concludes that, if confronted by the issue, Mississippi courts would adopt the majority rule and hold that the duty to present exculpatory evidence, if it exists at all, is limited to evidence which clearly negates guilt. Consequently, the grand jury's role as detached intermediary will continue to break the chain of causation in any false arrest claim, even when arguably exculpatory evidence is not presented, as long as all clearly exculpatory evidence is presented. In the Court's opinion, the only evidence in this case which was clearly and unambiguously exculpatory was Brenda's insistent statement that Brad was not involved at all in her criminal activities. The record indicates that this statement was presented to the grand jury, which nevertheless handed down an indictment against Brad on the basis of Farris's notes and other observations which led to the conclusion that Brenda could not have acted alone. Accordingly, the grand jury had probable cause to indict Brad, and the causal connection is broken. Summary judgment is therefore appropriate as to the § 1983 claim.

As an alternative basis for granting the motion, the Court notes that, in order to maintain a

§ 1983 claim against the County and the Sheriff's Department, the plaintiff must establish three elements: (1) a policymaker who is actually or constructively responsible for (2) a County-adopted "policy" which (3) was the "moving force" behind a violation of the plaintiff's constitutional rights. Piotrowski v. City of Houston, 237 .3d 567 (5th Cir. 2001)(quoting Monell v. Dep't of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)). Thus, even if the Court accepted Brad's implication that Farris deliberately and maliciously kept exculpatory evidence from the grand jury (which is not supported by the record), he would still have to demonstrate that some County policy, promulgated by an official policy maker, was the moving force behind Farris's improper actions. Brad has failed to do so.

The Court accepts, for summary judgment purposes, that Farris was allowed to bring his charges directly before a grand jury due to a county policy, enacted by an official policy maker, which gave investigators the discretion to send cases directly to a grand jury. However, the Court does not accept that this policy was the moving force behind any deprivation of Brad's rights, since, assuming any such hypothetical deprivation occurred, it was due to improper conduct by Farris rather than Farris properly executing his duties under the policy. As the defendants note, there is no evidence that Lowndes County has a policy of encouraging or requiring its investigating officers to submit false information before a grand jury in order to secure an indictment. Thus, even if Farris improperly and maliciously kept exculpatory information from the grand jury, attributing such wrongful conduct to the County or the Sheriff's Department would require the Court to hold the municipal defendants liable under a respondeat superior theory, which has been unambiguously rejected by the courts. Piotrowski v. City of Houston, 237 .3d 567 (5th Cir. 2001)("Monell and later decisions reject municipal liability predicated on respondeat superior, because the text of section

1983 will not bear such a reading").

In fact, as a final point, the Court notes the plaintiff's argument that <u>Monell</u> should not be applied to the instant case. The plaintiff points to <u>Board of County Commissioners of Bryan County, Oklahoma v. Brown</u>, in which a minority of the Supreme Court suggested that <u>Monell</u>'s doctrine of nonrespondeat superior liability should be reconsidered. 520 U.S. 397, 436, 117 S.Ct. 1382, 1404, 137 L.Ed.2d 626 (1997)(Breyer, J. dissenting). While the Court finds the plaintiff's arguments intriguing, they do not change the fact that Justice Breyer's dissent was just that – a dissent. The majority of the Supreme Court plainly supports <u>Monell</u>'s rule that municipalities cannot be held liable for § 1983 violations under a theory of respondeat superior, and the Court declines the plaintiff's invitation to revisit this venerable rule.

Having found that summary judgment is appropriate for both the Sheriff's Department and the County, the Court notes that no question of federal law remains in the instant case, the remaining issues of which consist exclusively of state law claims. Lacking any jurisdiction to proceed farther, it is hereby ORDERED that those claims be dismissed without prejudice so that the plaintiff may refile in state court. A separate order to that effect shall issue this day.

This is the 18th day of October, 2005.

                                                   **/s/ Michael P. Mills**
                                                   **UNITED STATES DISTRICT JUDGE**